From: Max Vance
Re: United States v. Max Vance (4:24-CR-00015)

Subject: Letter response to Moreno's Sept 23, 2025 letter
To: Chief Judge Matthew Brann

FILED
WILLIAMSPORT

NOV 05 2025

PER_____NR
DEPUTY CLERK

Dear Chief Judge Brann,
County prison officials have implemented a
comprehensive approach to providing agencies
like the do"j" and fbi with immoral,
unconstitutional, and unethical advantages in legal
disputes. Amongst this plethora of completely
unethical advantages that ~~are~~ is being
provided to the do"j" courtesy of county
prison officials/staff is the imposition of a
blockage on pertinent legal information directly
related to this case, including the docket sheet.
A day or two ago, for the first time I was
able to view the docket sheet; an outdated
printed copy was mailed to me. The letter that
do"j" Attorney Moreno submitted on 9-23-2025
is listed as a "brief in opposition" on the docket
sheet. I've decided to write this letter as a
response to Moreno's letter. I will limit the
content in this letter to responding to topics
mentioned in Moreno's letter, and to pointing
out how my brief in support was mischaracterized
and inaccurately portrayed.

Page 1 of 7

Page 2 of 7

Moreno's letter states "Vance does not allege that his cell has been searched." I averred on page 5 of my brief in support, document 82, that my cell has been searched and my legal documents, which include legal mail and court sealed documents, has been ~~inspected~~ inspected multiple times outside of my view, presence, and awareness by prison staff. I have never been cited for possessing contraband or for violating prison rules. Inspecting my property without me present is completely unnecessary and serves no legitimate purpose considering the fact that the inspections can be performed just as easily with me there. Considering the fact that prison officials readily and without question provide information to various antagonist this unnecessary behavior is suspicious, threatening, and can easily compromise the integrity of a legal defense.

In Moreno's letter it says "subject to poor air quality with "contaminated particles" in "some areas" of the prison". What I stated in my brief in support, Page 5 doc 82, is that there have been many incidents where the air has been "contaminated with particles that damage/

destroy neurological structures in the brain". The air quality issue is a sensitive topic. As a consequence of the nature of this pretrial incarceration that I am being compelled to endure, for the first time in my life I am living with drug addicts, and I am being subjected to prison environments where illicit drug is common. The Airborne neuro toxins and other harmful contaminants are being generated by the burning/smoking of illicit drugs and other toxic substances. As a result, I have been repeatedly exposed to second hand smoke, that consists of incredibly toxic particulate matter, from the burning and smoking of toxic substances. Since I've been transferred to county prisons in Pennsylvania by the USMS I've been repeatedly exposed to this hazard at every prison and "Correctional" facility that I've been held in. Prison officials are aware of this but the issue persists. This is a systemic issue throughout the county prison system in Pennsylvania.

Repeated exposures to these toxins have led to lingering adverse neurological effects and injuries, including frequent headaches, memory loss, and cognitive decline. Prison "medical" staff are refusing to allow me to

Page 4 of 7

see a neurologist or any clinician who has expertise in neurological health. My cognitive capabilities are ~~busy~~ deteriorating, and thus my ability to defend myself against allegations from the do"j", and even my ability to be a productive member of society is being attacked and undermined by the unethical, unhealthy, and injurious conditions in county prisons.

In his September 23rd letter Moreno ~~prescribed~~ provided his description of, exhibit B on doc 85. The last test result on exhibit B shows that my gastro-intestinal system is bleeding and that I am suffering from gastro intestinal bleeding. This is the primary indicator of colon cancer and is also associated with another commonly fatal condition, if not properly treated, known as an intestinal blockage/obstruction. The severity and frequency of the gastro intestinal bleeding has only increased over time. These harmful, severely injurious, and life threatening conditions of pre-trial confinement serve no legitimate governmental purpose or goal, and also ~~serve~~ function as ~~●~~ violations of my fifth and fourteenth ~~●~~ Amendment rights (Bell v. Wolfish, 441 U.S. 520 (1979)).

Page 5 of 7

In his letter Moreno brought up the
photocopy policy at this County prison,
described in doc 85 exhibit E. Numerous
prisons in the U.S. allow prisoners including
pre-trial prisoners direct access to
photocopy machines so that they can
copy sensitive legal documents, including
legal mail and court sealed documents,
without compromising their legal defenses
and reveal sensitive information ~~to people~~
~~them~~ inappropriately. The claim that it is
necessary to compel pre-trial prisoners to unethically
and unnecessarily waive their 1st amendment
rights and ~~their~~ attorney-client privilege to
avoid copyright infringement is a lie and
a false pretense created by corrupt County prison
officials. The temporal and economic resources
needed to use the photocopy machine to
violate copyrights would be extreme,
and ultimately cost prohibitive, making such
an activity completely impractical. The
prison charges 10 cents per photocopied page
which is much more than what content
owners and publishers charge per page.
The reality is this resource is being abused by
corrupt County prison officials to make it more
difficult for pre-trial prisoners to share

Page 6 of 7

legal information with the courts and legal experts. This perarcious policy is designed to discourage prisoners from sharing, and limit the ability of prisoners to share, information with the courts and others that presents the prison in a negative light.

On the last page of Moreno's letter he says "Vance's complaint of the lack of a notary in the prison, it is not clear how this prejudices his defense". The lack of an available notary service for my use restricts and limits my access to the courts. Numerous motions in criminal and civil court require affidavits. Power of attorney is needed to fund my legal defense preparation. These funds are crucial to my ability to prepare my legal defense. This was stated on page 4 of my brief in support (doc 82).

My ability to have unobstructed communications with various legal and defense experts is crucial for my legal defense preparations, especially due to the fact that prison officials have imposed embargoes on all categories of information including legal information. This

Page 7 of 7

Is discussed in my brief in support
(Doc 82).

On the second page of Moreno's
Sept 23rd 2025 letter he states
"The Government cannot speak to any
legal phone calls". County Prison
officials/staff have provided the do"j" with
records on all of my phone calls including
my legal calls, that can be made successfully
to only a couple of legal offices. Records
on all my legal calls have been provided
to the do"j" both successful and
unsuccessful calls I will submit this information
as exhibit C with this letter.

County prison officials/staff continue to
abuse their discretion in every possible way
causing substantial detriment to
my health and legal defense preparations
with no end insight. Prison officials have
made their intentions abundantly clear. Their
intentions are to obstruct and undermine my
legal defense preparations.
570 323 9314 is a legal call.

Date: 11-1-2025, Nov 1 2025
Sincerely,
Max Vance




Max Vance
Lycoming County Prison
277 W Third street
Williamsport, PA 17701

RECEIVED
WILLIAMSPORT

NOV 0 5 2025

PER ___NR___
DEPUTY CLERK

Clerk of the Court
United states District Court
240 west Third street
Williamsport, PA 17701

Urgent Confidential Legal Mail